## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| VANTIV, LLC<br><br>8500 Governors Hill Drive<br>Maildrop 1GH1Y1<br>Symmes Township, Ohio 45249<br><br>      Plaintiff,<br><br>   vs.<br><br>T1 Payments, LLC<br><br>10161 W. Park Run Dr., #150<br>Las Vegas, Nevada 89145<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case No. 17-cv-164<br><br>Judge<br><br>**JURY TRIAL**<br>**DEMANDED** |

## COMPLAINT

Plaintiff Vantiv, LLC ("Vantiv"), for its Complaint against Defendant T1 Payments, LLC ("T1 Payments"), states as follows:

## INTRODUCTION

1.      Recently, Defendant T1 Payments was sued for fraud and civil RICO in the U.S. District Court of Nevada by Venable LLP on behalf of a merchant alleging that T1 Payments caused $6,000,000 in damages and is a "fake payment processing company." *See* Exhibit A at ¶¶ 1, 105 & 129-138.  That complaint alleges that the executives who run T1 Payments, Debra King (its owner and manager), her son Donald Kasdon (the CEO), and his girlfriend Amber Fairchild (the COO), used it as "a mere conduit" to "steal money". *Id. ¶* 20.  Attached to that complaint are pictures Kasdon and Fairchild flaunted on social media of the purchases they made from the money they allegedly "stole," including multiple Lamborghinis. *See* Exhibit B.

2.      Plaintiff Vantiv is likewise a victim of Defendant's fraud. Its investigation continues, but this much is already clear to Vantiv: not only did T1 Payments breach its contract with Vantiv, but it also outright made up fictitious entities to defraud Vantiv, causing damages that exceed $900,000 and are expected to rise into the millions.

3.      Not only that, but to accomplish its scheme to deceive Vantiv, T1 Payments used stolen credit card numbers, thereby defrauding not only Vantiv, but also credit card companies, and many everyday people.  In fact, in addition to defrauding Vantiv, credit card companies, and individual cardholders, T1 Payments also stole money from merchants by employing a scheme to divert funds to Defendant's bank account that should have gone to the merchants.

4.      Because the very purpose of Defendant's fraudulent scheme was to conceal its misconduct, Vantiv was deceived for several months with no reason to know it was being harmed, all the while being set up to incur significant losses.  Upon receiving notice that a fraud may exist, Vantiv promptly terminated the relationship, though not before accruing over $900,000 in losses, which are continuing to grow and the full extent of which will not be known for months.

5.      Vantiv brings this action to hold T1 Payments accountable for its fraud and to ensure that T1 Payments is held to its contractual obligations.

## PARTIES

6.      Plaintiff Vantiv is a limited liability company organized under the laws of Delaware, with its principal place of business in Symmes Township, Ohio.  None of the members of Vantiv are citizens of Nevada.

7.      Defendant T1 Payments is a limited liability company organized under the laws of the state of Nevada.  On information and belief, all of the members of T1 Payments are citizens of Nevada.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and because Vantiv seeks monetary damages in excess of $75,000, exclusive of costs and interest.

9.      Defendant is subject to this Court's personal jurisdiction and venue is proper in this District because Defendant consented to personal jurisdiction and venue in this District.  In this regard, the contract at issue in this matter, which Defendant entered into, states that "The parties hereby consent and submit to service of process, personal jurisdiction, and venue in the state and federal courts in Cincinnati, Ohio or Hamilton County, Ohio, and select such courts as the exclusive forum with respect to any action or proceeding arising out of or in any way relating to this Agreement, and/or pertaining in any way to the relationship between Provider and Processor." *See* Exhibit C § 24.  Defendant is also subject to this Court's personal jurisdiction under Ohio Rev. Code § 2307.382(A)(2) because Defendant contracted to do business in this District.  In addition, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims alleged occurred in this District.

## FACTUAL BACKGROUND

### Defendant's Role As Payment Facilitator

10.      Vantiv is an industry leading payment processor that handles more than 20 billion transactions a year.  Vantiv enables merchants of all sizes to accept and process credit, debit, and prepaid payments.  It has been in business for more than forty years.

3

11.     On March 31, 2016, T1 Payments entered into a contract to act as a "payment facilitator" for Vantiv (the "Agreement").  *See* Ex. C.  About two months later, on May 20, 2016, T1 Payments went "live" in its role as a payment facilitator for Vantiv.

12.     As a payment facilitator, T1 Payments would sign up merchants to have their customers' payment card transactions processed by Vantiv.  Pursuant to the Agreement, T1 Payments would then act as an intermediary between Vantiv and those merchants.

13.     Under the Agreement, T1 Payments had the duty to perform underwriting on those merchants it would sign up, in order to ensure that they were legitimate businesses with acceptable risk profiles. Some merchants, such as psychics or dating services, are considered particularly high risk because of the frequency with which their payment card transactions are fraudulent or otherwise subject to charge reversals.

14.     The merchants signed by T1 Payments would submit their payment card transactions through T1 Payments for processing by Vantiv.  As the payment facilitator, T1 Payments was contractually responsible for "funding" its merchants' accounts—that is, ensuring that the merchant received the money from the transaction.  T1 Payments charged its merchants a fee for each transaction.

**Responsibility For Chargebacks**

15.      Under the Agreement, T1 Payments was also responsible for chargebacks. Chargebacks are card payment reversals initiated by cardholders (often due to the fraudulent use of the cardholder's credit card number).  The Agreement obligated T1 Payments to maintain an open account (accessible by Vantiv) with enough funds to cover all chargebacks for any merchants it signed up.  T1 Payments was additionally required to maintain sufficient funds in that account to also cover all fees due Vantiv under the Agreement.

4

16.     Chargebacks can occur many months after the initial transaction.  As such, the Agreement obligates T1 Payments to maintain an open account (accessible by Vantiv) with sufficient funds to cover all chargebacks and fees for one year after termination of the Agreement.  *See* Ex. C § 19.

**Vantiv Warns T1 Payments**

17.     In September of 2016 (about four months after T1 Payments went "live" as a payment facilitator under the Agreement), Vantiv notified T1 Payments that the merchants T1 Payments had signed up were exhibiting an unacceptably high rate of chargebacks and credit card fraud.

18.     The rates of chargebacks and credit card fraud were so high that they exceeded the Operating Regulations established by the credit card companies, such as VISA, MasterCard, Discover and American Express.  These high chargeback and fraud rates constituted an "Event of Default" under the Agreement, which entitled Vantiv to immediately terminate the Agreement.  *See* Ex. C § 13(iii).

19.     Had it known at this time that Defendant was engaging in a fraudulent scheme, Vantiv would have immediately terminated the relationship.  It is only because Vantiv had no reason to know of the fraudulent scheme at this time that T1 Payments was given an opportunity to cure, as is typical of Events of Default.  Vantiv, however, specifically warned T1 Payments not to sign up high risk merchants.

20.     Two months later, in early November of 2016, it became clear that T1 Payments had continued to sign up high risk merchants.  The chargebacks and credit card fraud continued at levels in excess of the Operating Regulations, again constituting an Event of Default entitling Vantiv to terminate the Agreement.

21.     As such, on November 16, 2016, Vantiv sent T1 Payments a notice of Vantiv's intent to terminate the Agreement.  While Vantiv had the right to terminate the Agreement immediately without advance notice, it did not do so, again because at this point Defendant's fraudulent acts remained hidden (by design).  Unaware that it was being deceived, Vantiv notified T1 Payments that Vantiv intended to terminate the Agreement in about three months, on February 2, 2017 (to give T1 Payments time to find another processor).

22.     Had Vantiv known of Defendant's fraudulent acts, Vantiv would have terminated the relationship immediately.

**T1 Payments Cuts and Runs**

23.     In early January of 2017, Vantiv observed that the unacceptably high rates of chargebacks for T1 Payments had grown even higher.

24.     At this point, Vantiv immediately terminated processing on January 25, 2017, in advance of the previously established February 2, 2017 termination date.  Vantiv also instructed T1 Payments to fund their account—out of which chargebacks were supposed to be paid—as T1 Payments was obligated to do under the Agreement.  The CEO of T1 Payments, Mr. Kasdon, stated that its account would be fully funded by January 31, 2017.

25.     Rather than fully funding its account, however, T1 Payments instead closed that account, in clear breach of the Agreement.

26.     This breach has left Vantiv holding the bag for over $900,000 dollars in chargebacks that are the responsibility of T1 Payments, a number that continues to grow daily, and that Vantiv expects may rise millions more given the fraudulent acts of T1 Processing that Vantiv has recently uncovered.

**The Fictitious Entities And Stolen Credit Card Numbers**

27.     Vantiv conducted an investigation and discovered that T1 Payments created two fictitious merchants to deceptively conceal its inability to cover chargebacks and to fraudulently induce Vantiv to continue processing after Vantiv was contractually entitled to stop.

28.     In early November of 2016, as it was becoming clear that T1 Payments was having excessive chargebacks at an even higher rate than before, T1 Payments invented two fictitious merchants – "Sierra Online" and "Omni Marketing."   T1 Payments fabricated these entities so that it could temporarily fund its account with money to pay for the immediately impending chargebacks and induce Vantiv to continue processing.

29.     T1 Payments set up these two fake merchants by using its own bank account as the supposed bank account of the fake merchants.  In this way, using stolen credit card numbers, T1 Payments was able to submit hundreds of fraudulent transactions in November, December and January and receive funds *in its own account* drawn from the accounts of the cardholders whose numbers were stolen.

30.     T1 Payments also fraudulently siphoned off funds that it was supposed to direct to merchant accounts.  It did this by abusing its position as an intermediary between Vantiv and the merchants to redirect funds to its own bank account that should have been deposited in the merchants' accounts.

31.     The funds from these fake purchases and other fraudulent acts were then used to pay for chargebacks that previously accrued, disguising that T1 Payments did not have legitimate funds to pay for those chargebacks.  This false appearance that T1 Payments was current on its account induced Vantiv to continue processing for T1 Payments for over two additional months. Had Vantiv known that T1 Payments lacked the funds necessary to cover its chargebacks and

was using fake transactions, diverted funds, and stolen credit card numbers to conceal its deficiency, Vantiv would have stopped processing immediately.

32.     Of course, Defendant's use of stolen credit card numbers and phony transactions is now resulting in yet additional chargebacks, at ever higher rates.  And, given that T1 Payments has closed its account, it has forced Vantiv to pay not only for the chargebacks T1 Payments accrued in the ordinary course of business, but also those resulting from the transactions T1 Payments fabricated with fake entities.

33.     To pull off its scheme to deceive Vantiv to continue processing, T1 Payments willfully defrauded everyone in its path.  T1 Payments not only swindled Vantiv, but it also victimized the merchants and the individual consumers whose stolen credit card numbers it used for the bogus transactions, all to enrich T1 Payments.

## COUNT I
(Breach of Contract)

34.     Vantiv repeats and realleges the allegations set forth above as if fully set forth herein.

35.     The Agreement is an enforceable contract.

36.     T1 Payments breached the Agreement by, among other things, failing to maintain an open account with sufficient funds to cover all chargebacks and fees due Vantiv.

37.     All conditions precedent to the enforcement of the Agreement by Vantiv have occurred.

38.     As a proximate result of the breach of the Agreement by T1 Payments, Vantiv is entitled to damages in excess of $900,000 plus its reasonable attorneys' fees and costs pursuant to Section 22 of the Agreement.

## COUNT II
(Fraud)

39.     Vantiv repeats and realleges the allegations set forth above as if fully set forth herein.

40.     As explained above, Defendant T1 Payments engaged in a scheme to defraud Vantiv, causing damages of over $900,000 that are expected to rise into the millions.  As part of that scheme, T1 Payments falsely represented to Vantiv, among other things, that Sierra Online and Omni Marketing were genuine merchants that had signed up to process with Vantiv, when they were actually fictitious entities concocted by Defendant.  T1 Payments also submitted fabricated transactions to Vantiv using stolen credit card numbers and diverted funds to its own account that belonged to merchants.  T1 Payments engaged in these and other fraudulent acts to create the false impression that T1 Payments had sufficient legitimate funds in its account to pay for chargebacks and fees.

41.     Defendant T1 Payments made these false representations to Vantiv repeatedly, starting in early November of 2016, throughout the remainder of that month and December, and up through January 25, 2017.

42.     Those representations were material and T1 Payments made them with the intent to mislead Vantiv.

43.     Vantiv justifiably relied on those representations to its detriment.

44.     Vantiv has been injured as a proximate result of that reliance.

**WHEREFORE**, Vantiv demands judgment against T1 Payments for the following:

1.     Compensatory damages in an amount to be proven at trial, together with interest, costs and Vantiv's attorneys' fees incurred in the present action;

2.     Punitive damages; and

3.      Such other relief as may be just and appropriate.


Dated: March 14, 2017

**BENESCH, FRIEDLANDER,**
**COPLAN & ARONOFF LLP**

By:      *s/Gregory J. Phillips*
             Gregory J. Phillips  (0077601)
             Trevor G. Covey  (0085323)
             Benesch Friedlander Coplan & Aronoff LLP
             200 Public Square, Suite 2300
             Cleveland, Ohio  44114-2378
             Telephone:  (216) 363-4500
             Facsimile:  (216) 363-4588
             gphillips@beneschlaw.com
             tcovey@beneschlaw.com

             - and -

             Andrew J. Jarzyna
             David D. Pope
             Benesch Friedlander Coplan & Aronoff LLP
             333 W. Wacker Dr., Suite 1900
             Chicago, IL 60606
             Telephone: (312) 212-4950
             Facsimile: (312) 767-9192
             ajarzyna@beneschlaw.com
             dpope@beneschlaw.com

             *Attorneys for Plaintiff Vantiv, LLC*